IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

OCT 25 2000

Michael N. Milby, Clerk

| | |
|---|---|
| BILL DOBSON, D/B/A DOBSON § | |
| EXCAVATING AND TRUCKING § | |
| and JOHN ALBRITTON § | |
| § | |
| VS. § | C.A. NO. C-00-003 |
| § | |
| § | |
| JEREMY SEAN WILSON and KRISTA § | |
| (WILSON) CHAAPEL, ANASTASIA § | |
| ROBSON, Individually, and as Administratix § | |
| of the Estate of NATALIE BREDTHAUER, § | |
| Deceased and DR. LARRY BREDTHAUER § | |
| NATALIE BREDTHAUER, Deceased, and § | |
| DR. LARRY BREDTHAUER, § | |
| Defendants § | |

### JEREMY WILSON AND KRISTA (WILSON) CHAAPEL'S
### FIRST AMENDED THIRD PARTY COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendants and Counter-Plaintiffs, Jeremy Wilson and Krista (Wilson) Chaapel (hereinafter referred to as the "Wilsons") and file this, their First Amended Third-Party Complaint against Third-Party Defendants, Strick Corporation and Paccar, Inc. (Strick and Paccar) and would show unto the Court as follows:

### A. Parties

1. Defendant and Counter/Plaintiff, Jeremy Wilson is an individual who is a citizen of the State of Texas.

1

2. Defendant and Counter/Plaintiff, Krista (Wilson) Chaapel, formerly known as Krista Leigh Wilson, now married, is an individual who is a citizen of the State of Texas.

3. Strick Corporation, Inc., is a Corporation organized and existing under the laws of the State of Delaware and have answered herein.

4. Paccar, Inc. is a corporation orgainzed and existing under the laws of the State of Delaware and have answered herein.

### B. Jurisdiction: 28 U.S.C. §1335 "Interpleader" and 28 U.S.C. §1332 "Diversity"

5. At the time of this lawsuit, and all subsequent filings, Albritton and Dobson Trucking were citizens of the State of Alabama. Strick and Paccar are corporations organized under the laws of Delaware.

### C. Venue: 28 U.S.C. §1391

6. This cause of action arose in substantial part in Nueces County, Texas.

### D. Facts

7. On or about July 5, 1999, John Albritton was driving a 1991 Kenworth T-600 eighteen-wheel tractor rig with a trailer manufactured by Strick for Dobson Trucking. He was traveling south on U.S. Highway 181 between Beeville, Texas and Skidmore, Texas. John Albritton claims that he "slammed on his brakes to avoid a driver braking in front of him on a wet, slick, roadway". As a result of his actions, his eighteen-wheel tractor-trailer rig jack-knifed out of control. It slid from the south bound lane of travel across the median and into the oncoming north bound lane of travel on U.S.

Highway 181. At the same time, three college students, Natalie Bredthauer, Jeremy Sean Wilson and Krista (Wilson) Chaapel, were north bound in the Bredthauer Nissan Sentra when the tractor-trailer rig suddenly and without warning entered and blocked their north bound lane of travel. Jeremy Sean Wilson, who was the driver of the vehicle, had no time to react to avoid the collision and the Bredthauer Nissan went under the tractor-trailer being driven by John Albritton. As a result of the impact on the roof of the Nissan vehicle, Natalie Bredthauer sustained catastrophic mortal injuries, Jeremy Sean Wilson sustained catastrophic disabling injuries and Krista (Wilson) Chaapel sustained severe injuries. Natalie Bredthauer died at the scene of the accident. Jeremy Sean Wilson sustained serious closed head injuries that required several weeks of hospitalization and resulted in a serious and potentially permanent closed head injury. The extent that these injuries will affect him in the future is not currently known with reasonable medical certainty. Krista (Wilson) Chaapel sustained serious injuries, was treated in the hospital, released and there is uncertainty as to the future of her injuries as well.

### E. Claims

#### (1) Trailer

8. Wilsons hereby allege that the tractor-trailer, manufactured by Strick, was unreasonably dangerous and defective in its design and marketing. Strick is in the business of manufacturing trailers. The trailer made the basis of this lawsuit was

unreasonably dangerous or defective at the time that it was marketed and placed in the stream of commerce by Strick.

9. The Wilsons, relying on Rest. 3rd Torts: Products Liability §2, contend that Strick is engaged in the business of selling or otherwise distributing trailers and sold and/or distributed the defective trailer made the basis of this lawsuit and subject to liability for the harm it caused to the Wilsons by its defect. (Rest. 3rd Torts: Products Liability §1).

10. The trailer is defectively designed because the foreseeable risk of harm posed by the trailer could have been reduced or avoided by the adoption of a reasonable alternative design by the seller and/or other distributor, or a predecessor in a commercial chain of distribution. The omission of the reasonable alternative design renders the trailer not reasonably safe. (Rest. 3rd Torts: Products Liability §2).

11. The trailer is defective because of inadequate warnings or instructions because the foreseeable risk of harm posed by the trailer could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe. (Rest. 3rd Torts: Products Liability §2).

12. The Wilsons specifically plead that the defect in the trailer may be inferred because the harm sustained by the Wilsons was caused by a product defect existing at

4

the time of the sale or distribution, because it failed to contain safer alternate design and/or guards because of the relatively low energy of the impact. Specifically:

(a) at the time of this accident, without the defective design of the product, the injuries would have been relatively minor and; and

(b) in this particular case, there were no other causes other than a product defect existing at the time of the sale or distribution that were a producing cause of the Wilsons catastrophic injuries. (Rest. 3rd Torts: Products Liability §3).

13. Specifically, the Wilsons allege that the trailer in question was defective at the time of the commercial sale or other distribution and the defect was a substantial factor in increasing the Wilsons harm beyond that which would have resulted from other causes. Defendants contend that specific proof supports a determination that the harm would not have resulted from other causes in the absence of the product defect and if the trailer had been properly designed. (Rest. 3rd Torts: Products Liability §16).

(2) Tractor

14. Wilsons hereby allege that the tractor which was manufactured by Paccar was unreasonably dangerous and defective in its design and marketing. Paccar is in the business of manufacturing tractors under the name "Kenworth". The tractor made the basis of this lawsuit was unreasonably dangerous or defective at the time that it was marketed and placed in the stream of commerce by Paccar. Pleading more specifically, Defendant contends that if John Albritton's testimony is correct, then immediately preceding this accident as he attempted emergency procedures of braking and changing lanes, he lost control of his tractor/trailer rig manufactured by Paccar. It is Wilson's

5

contention that if, in fact, this occurred, there were design defects in the Paccar steering mechanism and brake system that caused or contributed to the driver's loss of control which was a producing cause of this accident.

15. The Wilsons contend that Paccar is engaged in the business of selling or otherwise distributing tractors and did sell or distribute the defective tractor made the basis of this lawsuit and subject to liability for the harm it caused to the Wilsons by its defect. (Rest. 3rd Torts: Products Liability §1).

16. The tractor contains a defective design because the foreseeable risk of harm posed by the tractor could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in a commercial chain of distribution. The omission of the alternative design renders the product not reasonably safe. Specifically, Plaintiffs' contend that (if the driver's story is true) when the driver attempted to take emergency actions and lost control of his rig safer alternative designs, should have been incorporated by Paccar prior to the sale and distribution of this particular tractor/trailer rig. Specifically, the Pittman arm of the steering mechanism in this tractor/trailer is defective and has been the subject of recall due to a manufacturing, design, or marketing defect. In addition, Paccar has consistently opposed the use of antilock brakes, automatic slack adjusters and failed to install the proper length of air hoses on the brakes in question. This truck could have and should have had an adequate braking system that would have reduced or eliminated the

6

possibility of loss of control during the emergency actions allegedly taken by the driver immediately prior to the accident.

17. The trailer is defective because of inadequate warnings or instructions because the foreseeable risk of harm posed by the tractor could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe. (Rest. 3rd Torts: Products Liability §2).

18. The Wilsons specifically plead that the defect may be inferred because the harm sustained by the Wilsons was caused by a product defect existing at the time of the sale or distribution, because it failed to contain adequate design and/or warnings, specifically:

(a) the tractor jack-knifing as a result of Albritton's failure to have an adequate braking and steering system since the defective brakes and steering significantly increases the probability of loss of control and constitutes a product defect; and

(b) in this particular case, according to the testimony of the driver, his attempts at braking and steering were the producing cause of his loss of control and the jack-knifing of the truck in question and constituted a defect that existed at the time of sale or distribution of the Paccar truck in question.

19. Strick exercised a total disregard to the presence of an ultra hazardous condition by failing through either gross negligence or intentional conduct to include side rail guards that would have prevented a side under ride such as the one made the basis of this lawsuit. Paccar has exercised total disregard with regard to the steering and

7

brake systems of this truck and have specifically attempted on numerous occasions to repeal the requirements of antilock brakes though they know that such brakes reduce or eliminate the risk of loss of control in emergency situations. Both of these counter-defendants embarked in a course of conduct which objectively and subjectively constitute malice. Such malicious conduct constitutes gross negligence and was a producing and/or proximate cause of the injuries and death in question.

20. Jeremy Wilson was 20 years old at the time of his accident. He was in good physical health and a student at Texas A & M University. Jeremy Wilson suffered severe closed head injuries which have resulted in disabling and possibly permanent brain damage. As a result of such injuries, Jeremy Wilson has suffered past medical expense to date in the amount of at least $96,000.00. Jeremy Wilson has suffered damages, both in the past and in the future, which will continue to the end of his life as follows: loss of earning capacity, loss of physical and mental capacity, loss of earning capacity, physical pain, disfigurement, disability, mental anguish. In addition, he has and may require reasonable and necessary hospital, medical, nursing and custodial care and other expenditures for the care and treatment of his injuries in the past and will continue to require in the future until the end of his life.

21. Jeremy Wilson would show that a result of the above and foregoing they have been damaged in the amount of Five Million and No/100 ($5,000,000.00) Dollars in actual damages and an additional amount of punitive damages as provided for by law, for which sums he here now sues.

8

22. Krista (Wilson) Chaapel was 23 years old at the time of the accident. She was in good physical health and was a college student at Texas A & M University. As a result of this accident Krista (Wilson) Chaapel suffered a fractured severe facial fracture and multiple contusions to her entire body. Krista (Wilson) Chaapel has incurred to date total past medical damages in the amount of at least $17,922.00. Krista (Wilson) Chaapel has suffered damages, both in the past and in the future, which will continue to the end of her life as follows: loss of earning capacity, loss of physical capacity other than earning capacity, physical pain, mental anguish, the requirement for reasonable and necessary hospital, medical, nursing and custodial care and other expenditures for the care and treatment of her injuries which she has required in the past and will continue to require in the future until the end of his life.

23. Krista (Wilson) Chaapel would show that a result of the above and foregoing she has been damaged in the amount of Two Million and No/100 ($2,000,000.00) Dollars in actual damages and an addition for punitive damages as provided by law, for which sums she here now sues.

WHEREFORE, PREMISES CONSIDERED, Jeremy Wilson an incapacitated person and Krista (Wilson) Chaapel, prays that the Counter-Defendants be cited in terms of law to appear and answer herein and that upon final trial hereof, Jeremy Wilson and Krista (Wilson) Chaapel, have judgment against the Counter-Defendants, jointly and severally, for Seven Million and No/100 ($7,000,000.00) Dollars in actual damages and an additional amount for punitive damages as provided by law, with

prejudgment interest at the prevailing legal a rate, for post judgement interest at the prevailing legal rate, for costs of court, and for such other and further relief, special and general, at law and in equity, to which "Wilsons" may show themselves justly entitled.

Respectfully submitted,

By: _____
PAUL SWACINA
Federal I.D. No. 5924
State Bar No. 19542700
ATTORNEY-IN-CHARGE
David Crago
Federal I.D. No. 13868
State Bar No. 04975260

OF COUNSEL:

**BRIN & BRIN P.C.**
1202 Third Street
Corpus Christi, TX 78404
Telephone: (512) 881-9643
Telecopier: (512) 883-0506

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document has been forwarded to all attorneys of record, on this the ____ of October, 2000 in accordance with the Federal Rules of Civil Procedure.

_____
Paul Swacina

10

**Via CMRR**
Ms. V. Elizabeth Ledbetter
c/o DAVIS & WILKERSON
P.O. Box 2283
Austin, Texas 78768-2283


**Via Regular Mail**
Mr. William T. Powell
Mr. Michael H. Norman
952 Echo Lane, Suite 410
Houston, TX 77024
Attorneys for Anastaia Robson as Administrator of the
Estatf Natatlie Bredthauer, Deceased

**Via Regular Mail**
Mr. Randy Howry
Herman & Howry, L.L.P.
1900 Pearl Street
Austin, TX 78705
Attorney for Dr. Larry Bredthauer

11